IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ITTHISON PHENGSENGKHAM | § | |
| | § | |
| v. | § | 2:10-CV-185 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**REPORT AND RECOMMENDATION TO DENY**
**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Defendant ITTHISON PHENGSENGKHAM has filed with this Court a Motion to Vacate,

Set Aside, or Correct Sentence Pursuant to 28 U.S.C. section 2255.  For the reasons hereinafter

expressed, the undersigned United States Magistrate Judge is of the opinion defendant is not entitled

to relief and recommends the motion to vacate, set aside, or correct sentence be DENIED.

I.
FACTUAL AND PROCEDURAL HISTORY

In early 2007, defendant Itthison (also referred to as Eddy) Phengsengkham, was arrested

after years of investigation established he played a major role in a local drug ring.  *United States v.*

*Phengsengkham*, 2:07-CR-65(2), "Criminal Complaint," doc. 1 (filed Feb. 14, 2007); "Warrant for

Arrest," doc. 32 (filed Feb. 15, 2007).  A search of defendant's residence executed at the same time

the warrant for his arrest was executed uncovered several pounds of illegal narcotics, two pistols,

several thousand dollars, and various items evidencing drug trafficking and money laundering.  *Id.*,

Transcript of Jury Trial ["Transcript"], vol. II, doc. 1031 (filed Feb. 12, 2008).    After an

unsuccessful motion to suppress, defendant proceeded to jury trial where he was found guilty of

conspiracy to commit a drug offense, conspiracy to launder money, and felon in possession of a

firearm.  Defendant received sentences of life, 240 months', and 120 months' incarceration,

respectively.

Defendant appealed the Court's denial of his motion to suppress. *Id.*, Opinion of the Fifth Circuit Court of Appeals, doc. 1067 (filed in the 5th Cir. July 31, 2009, filed in the District Court Aug. 31, 2009). The denial was affirmed on direct appeal. *Id.* Defendant's 28 U.S.C. section 2255 motion followed. *Id.*

## II.
## DEFENDANT'S ALLEGATIONS

In support of his contention that his conviction and sentence were imposed in violation of the Constitution or laws of the United States, defendant contends,

1. He received ineffective assistance of counsel at trial and on appeal because
   a. his attorney failed to fully and completely litigate defendant's suppression claim, and
   b. his attorney failed to adequately investigate the underlying case; and

2. His due process rights were violated because the prosecution withheld exculpatory impeachment evidence concerning one of its witnesses.

## III.
## MERITS

*A. Ineffective Assistance of Counsel on the Suppression Claims*

In his first ground of error, defendant contends he received ineffective assistance of counsel at trial and on appeal. The proper standard for judging a defendant's contention he is entitled to relief on the ground that counsel rendered ineffective assistance is enunciated in *Strickland.* The *Strickland* test applies equally to the review of both trial and appellate proceedings. *Hughes v. Booker*, 220 F.3d 346, 348 (5th Cir. 2000). Under the two-pronged *Strickland* standard, a defendant must show counsel's performance was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

An attorney's performance was deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *Id.*, 104 S.Ct. at 2064. Counsel's performance is viewed from counsel's perspective at the time of trial, not from hindsight. *Id.*, 104 S.Ct. at 2064. A reviewing court's scrutiny of trial counsel's performance is highly differential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.*, 104 S.Ct. at 2064. A defendant asserting his attorney's performance was ineffective "has the burden to prove ineffectiveness by a preponderance of the evidence." *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000). In cases regarding the assistance of counsel on appeal, the Fifth Circuit has held, "[t]he Constitution requires that 'the client be advised not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal.'" *United States v. Faubion*, 19 F.3d 226, 231 (5th Cir. 994) (quoting *Qualls v. United States*, 774 F.2d 850, 851-52 (7th Cir. 1985)).

In order to meet the *Strickland* standard, it is not enough to merely show deficient performance by counsel. A defendant must also show counsel's deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In the context of an appeal, if the defendant alleges he was, either actually or constructively, denied the assistance of counsel altogether, no specific showing of prejudice is required. *Roe v. Flores-Ortega*, 528 U.S. 470, 483, 120 S.Ct. 1029, 1038, 145 L.Ed.2d 985 (2000). In such cases, "the adversary process itself [is] presumptively unreliable." *Id.*, 120 S.Ct. at 1038 (quoting *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2039, 80 L.Ed.2d 657 (1984)). Consequently, prejudice is presumed. *See id.*, 120 S.Ct. at 1038.

1.  Litigation of the Motion to Suppress

In this case, defendant's trial attorney filed a pre-trial motion to suppress challenging the search warrant executed on defendant's residence.  *Phengsengkham*, 2:07-CR-65(2), "Motion to Suppress," doc. 686 (filed Aug. 1, 2007).  By the motion, defendant averred the warrant was based upon stale information, namely controlled drug buys that occurred several days, and even months, before the warrant was executed.  *Id.*, pg. 1.  The District Court referred the motion to the undersigned United States Magistrate Judge, who, after holding an evidentiary hearing on the motion, recommended denial of the motion because (i) the information upon which the warrant was based was not stale and (ii) in any event, the officers executing the warrant were acting in good faith. *Id.*, "Report and Recommendation to Deny Defendant's Motion to Suppress," doc. 803 (filed Aug. 8, 2007).  The District Court adopted the Report and Recommendation.  *Id.*, "Order Adopting Report and Recommendation and Denying Defendant's Motion to Suppress," doc. 846 (filed Aug. 13, 2007).

On appeal, defendant was represented by a different attorney than the one who represented him at trial.  Counsel again urged the information in the search warrant affidavit was stale and therefore insufficient to provide probable cause for the search.  The Fifth Circuit did not pass upon the issue of staleness but held the good faith exception applied in the case and affirmed the Court's denial of the motion.  *Id.*, Opinion of the Fifth Circuit Court of Appeals, doc. 1067, pg. 2 (filed in the 5th Cir. July 31, 2009, filed in the District Court Aug. 31, 2009).

Defendant now contends evidence discovered during trial provided additional reasons upon which to suppress the search, and counsel was ineffective for failing to re-urge the motion to suppress when such evidence came to light and for failing to present such arguments on appeal.

2.  The Search Warrant Affidavit

Officer Carlos Perez was responsible for writing the search warrant affidavit and obtaining the search warrant for defendant's residence.  At the hearing on defendant's motion to suppress, Officer Perez testified on behalf of the government.  "Hearing on Motion to Suppress," doc. 1025 (filed Jan. 29, 2008).  Officer Perez indicated he and Federal Bureau of Investigation (FBI) Agent Dan Baldwin worked jointly to prepare the search warrant affidavit for the search of defendant's residence, although only Officer Perez's signature appears on the affidavit.  *Id.*, pg. 11, Gvt's Ex. A, pg. 13.  The search warrant affidavit came before the Court during the hearing on the motion to suppress.  In the affidavit, Officer Perez indicated that the information contained in the search warrant affidavit was based upon his "review of consensual tape recordings, telephone toll analysis, debriefings of confidential sources of information who's [sic] information has proven reliable in the past, affiant's own personal knowledge, experience, background, surveillance, and information provided to affiant by other law enforcement agents and investigators assigned to this investigation and others."  *Id.*, Gvt's Ex. A, pg. 5.

Officer Perez then recounted the undercover drug buys made by Ricky Ray Johnson, a cooperating source, from defendant; the substance of some intercepted phone calls between defendant and defendant's brother discussing details of their drug trafficking business; a report of police surveillance of defendant's residence at the Colonial Manor Motel where police observed activity consistent with drug trafficking; a report of police surveillance relating to the purchase of a convenience store by defendant's brother where the brother utilized drug proceeds to make the purchase; and a report of defendant's criminal record and of his known role in the distribution of methamphetamine in the area for several years.  *Id.*, pgs. 7-13.  Officer Perez presented the affidavit

to a state court judge, who issued the search warrant. *Id.*, pg. 12.

### 3. Evidence Discovered During Trial

Defendant contends evidence discovered during trial regarding (i) Officer Perez's personal knowledge of facts recited in the search warrant affidavit and (ii) Agent Shane Reese's involvement with the cooperating source provided additional grounds upon which to suppress the search, and counsel was ineffective for failing to re-urge the motion when such evidence came to light and ineffective for failing to present such arguments on appeal.

### a. Officer Perez's Personal Knowledge

Defendant contends Officer Perez, who completed the search warrant affidavit, (i) did not personally handle the cooperating source, Ricky Ray Johnson, (ii) did not have personal knowledge of the controlled drug buys, (iii) "did not have any personal knowledge of any of the facts he related in the affidavit regarding the informant's veracity, and basis of of [sic] knowledge." Amended Motion to Vacate Motion [sic], Set Aside, or Correct Sentence by a Person in Federal Custody," doc. 9, pg. 2 (filed Nov. 8, 2010).

A search warrant affidavit does not have to be based solely upon the affiant's personal knowledge. *United States v. Flanagan*, 423 F.2d 745, 747 (5th Cir. 1970). To the contrary, "[a]n affidavit may rely on hearsay—information not within the personal knowledge of the affiant, such as an informant's statement—as long as the affidavit presents a 'substantial basis for crediting the hearsay.'" *United States v. Laury*, 985 F.2d 1293, 1312 (5th Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 242, 103 S.Ct. 2317, 2334, 76 L.Ed.2d 527 (1983). Regarding reliance upon the hearsay of a fellow law enforcement officer in completing a search warrant affidavit, the Supreme Court has held, "[o]bservations of fellow officers of the Government engaged in a common

investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965).  The Fifth Circuit has also held personal observations of a fellow law enforcement officer are "presumed reliable" for purposes of a search warrant affidavit.  *United States v. Hayles*, 471 F.2d 788, 793 (5th Cir. 1973).

### i.  Officer Perez's Personal Handling of the Cooperating Source

At the hearing on the motion to suppress, Officer Perez indicated "we" had a cooperating source.  Hearing on Motion to Suppress, doc. 1025, pgs. 15-16.  The officer never stated he worked directly with the cooperating source.  In fact, he never made any statement concerning how much of his information concerning Johnson's drug buys and veracity were from his own experiences and how much was from other law enforcement officials.  He did, however, indicate he worked with FBI Agent Baldwin in preparation of the search warrant affidavit.  *Id.*, pg. 11.  While there was no evidence concerning the level of involvement Officer Perez had with the controlled buys, testimony at trial indicated Agent Baldwin was the main law enforcement officer who orchestrated and observed Johnson's undercover drug buys.  Transcript, vol. I, doc. 1030, pgs. 151-52.

Therefore, while defendant may be correct in that it appears Agent Baldwin, as opposed to Officer Perez, was the officer directly interacting with Johnson and overseeing the controlled drug buys made by Johnson, it is of no consequence.  Officer Perez's affidavit set forth information obtained by Ricky Ray Johnson and apparently relayed to Officer Perez by Agent Baldwin.  Agent Baldwin's reports to Officer Perez were presumptively reliable for purposes of the search warrant affidavit.  *See Ventresca*, 380 U.S. at 111, 85 S.Ct. at 747; *Hayles*, 471 F.2d at 793.  Any argument regarding possible error dur to Officer Perez not personally handling the cooperating source, but rather relying upon a fellow officer who directly handled the cooperating source, is meritless.  *See*

*Ventresca*, 380 U.S. at 111, 85 S.Ct. at 747; *Hayles*, 471 F.2d at 793.

        ii.  Officer Perez's Personal Knowledge of the Controlled Buys

Regarding Officer Perez's knowledge of the controlled buys, the affidavit indicated the cooperating source, Ricky Ray Johnson, had proven reliable in the past and that it was known defendant had been a local drug trafficker for years. "Hearing on Motion to Suppress," doc. 1025 (filed Jan. 29, 2008), Gvt's Ex. A, pgs. 5, 11. Additionally, and contrary to defendant's assertions, the information set forth in the affidavit concerning the controlled buys was not conclusory but was, rather, very detailed. Specifically, in the affidavit, Officer Perez set forth the date and location of each controlled buy along with the names of other people present at the buy, details about what defendant said to the cooperating source and what the cooperating source observed. "Hearing on Motion to Suppress," doc. 1025 (filed Jan. 29, 2008), Gvt's Ex. A, pgs. 7-8. As set forth in the affidavit, Johnson's reports were consistent with observations made by police surveillance units watching the location as the buys took place. *Id.*, pgs. 8, 13.

Apart from anything dealing with Ricky Ray Johnson, Officer Perez also included several other facts, totally independent of Johnson's information, indicating defendant was engaging in drug trafficking activity. Among other indica of drug activity, the affidavit set forth the substance of wiretapped phone calls between defendant and his brother where the two discussed aspects of their drug trafficking. *Id.*, pgs. 9-10. It detailed six different occasions where police surveillance units observed activity consistent with drug trafficking at defendant's residence. *Id.*, pgs. 10-11. Officer Perez also included in the affidavit defendant's known role as a methamphetamine distributor in the area for several years. *Id.*, pg. 11.

Therefore, there was a substantial basis for crediting Johnson's reports, and the affidavit was

not fatally flawed in its reliance on such.  *See Gates*, 462 U.S. at 242, 103 S.Ct. at 2334; *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960), *overruled on other grounds, United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (finding a "substantial basis" for crediting the hearsay of a confidential informant in a search warrant affidavit where the informant had previously given accurate information, his story was corroborated by other sources, and the person on whom the informant reported had a known criminal history).

      iii.  Officer Perez's Personal Knowledge of the Confidential Source's Veracity

Finally, concerning Officer Perez's personal knowledge of Johnson's veracity, Officer Perez indicated in the affidavit that the cooperating source "has provided information to law enforcement that has proven reliable and resulted in the seizure of controlled substances by law enforcement and the arrest of individuals."  *Id.*, pg. 6.  Defendant contends any reliance by Officer Perez in the affidavit upon Johnson's information was misleading because Johnson's veracity had never been established, or, if it had, it had not been so established with Officer Perez.

There is no evidence before the Court calling into question Johnson's veracity nor is there any indication of the extent of Officer Perez's personal knowledge of Johnson's veracity. Defendant's assertion that the officer "had no track record with CS1" is unsupported.  "Defendant's Reply to Government's Opposition to Amended Motion Under § 2255," doc. 35, pg. 8 (filed May 25, 2011).  Defendant's unsupported assertion is insufficient to create a viable argument in these proceedings.  *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (establishing a court cannot consider bald assertions, unsupported by anything in the record, to be of probative evidentiary value); *see also United States v. Stracener*, 959 F.2d 31, 33 (5th Cir. 1992) (applying *Ross* analysis to determination of a 28 U.S.C. section 2255 motion).

In any event, even assuming Officer Perez did not have any personal knowledge of Johnson's veracity and prior successful instances of being a cooperating source, he was nevertheless permitted to rely upon the hearsay of other officers in representing in the affidavit that Johnson was credible. *See Ventresca*, 380 U.S. at 111, 85 S.Ct. at 747; *Hayles*, 471 F.2d at 793. Put another way, it could be that Officer Perez made his statement concerning Johnson's prior role as an informant based upon direct interaction with Johnson on that occasion, or it could be that Officer Perez made his statement based upon what some other law enforcement officer told him. Either way is acceptable for the purposes of a search warrant affidavit. *See Ventresca*, 380 U.S. at 111, 85 S.Ct. at 747; *Hayles*, 471 F.2d at 793. All of defendant's contentions regarding Officer Perez's personal knowledge of facts relayed in the affidavit by Officer Perez are meritless.

### b. Agent Shane Reese's Involvement

Defendant also contends evidence regarding the extent of DEA Agent Shane Reese's involvement with Ricky Ray Johnson provided additional grounds to challenge the search. Specifically, defendant contends Agent Reese (i) was actually the officer who dealt with Ricky Ray Johnson, (ii) did not search Johnson or his car prior to the controlled buys, (iii) did not maintain surveillance of Johnson during the buys, (iv) did not search Johnson after the buys, and (v) failed to perform any field test to determine whether the substance presented by the cooperating source after each buy was a controlled substance. "Amended Motion to Vacate Motion, Set Aside, or Correct Sentence by a Person in Federal Custody," doc. 9, pgs. 2-3 (filed Nov. 8, 2010).

### i. Agent Reese and Ricky Ray Johnson

As discussed above, it appears Officer Perez was not the officer who primarily dealt with the cooperating source. Defendant is incorrect, however, in his statement that DEA Agent Shane Reese

was the handler.  To the contrary, it appears Agent Reese's only interaction with the Ricky Ray Johnson was when he was making an undercover meth purchase from Johnson *before* Johnson became a cooperating source.  *See* Transcript, vol. I, pgs. 129-30.[1]  All of defendant's allegations concerning the failings of Agent Reese are technically correct in that Agent Reese did not search the cooperating source before or after the buys, did not maintain surveillance on the source during the buys, and did not perform any field test on the drugs after the buys.  Defendant fails to recognize, however, that while Agent Reese did not perform any of these activities, the agent who did handle the cooperating source, FBI Agent Dan Baldwin did, in fact perform all of these tasks, thereby giving credence to the validity of Johnson's reports.

ii.  Agent Baldwin and Ricky Ray Johnson

Agent Baldwin was the cooperating source handler.  He testified that a few weeks after Agent Reese made the undercover purchase from Ricky Ray Johnson, Johnson and his wife were arrested on charges unrelated to Johnson's drug dealing.  "Transcript," vol. 1, doc. 1030, pg. 151.  Johnson spoke with the arresting officer, who contacted Agent Baldwin.  *Id.*  Johnson indicated to Agent Baldwin that he was willing to work with law enforcement to obtain evidence against the Phengsengkhams in exchange for favorable treatment of himself and his wife on the unrelated charges.  *Id.*  At trial, Agent Baldwin detailed how the controlled buys were orchestrated:

> Prior to the buy, of course, we did all the searches of the [cooperating source's] -- the CS's vehicle and his person, provided him $1,000 to make the

---

[1] In July 2006, Agent Reese, working in an undercover capacity, purchased methamphetamine from Johnson, who was at that time a known drug dealer.  *Id.*, Transcript, vol. I, doc. 1030, pg. 129.  Law enforcement believed defendant and defendant's brother, Sittithphone Phengsengkham, were Johnson's suppliers.  *Id.*, pg. 130.  Before the buy itself took place, Agent Reese spoke with Johnson and indicated he wanted to get some dope from a man named Eddy or from the Phengsengkhams.  *Id.*  Johnson indicated the dope would be from Eddy.  *Id.*  A few days later, Agent Reese purchased one ounce of meth from Johnson.  *Id.*, pg. 129.  Immediately after the buy, law enforcement officers followed Johnson as he went to a trailer belonging to defendant, Eddy Phengsengkham.  *Id.*

purchase, established surveillance at the motel, and directed him to go to the motel and make the purchase, and then to go ahead and, you now, once the purchase was made to depart the motel.

Before we sent him in there, of course, we gave him money. We gave him a recording device -- or, excuse me, the first buy, we did not utilize the recording device. We just sent him in to the motel.

Prior to that, we had made contact with Eddy Phengsengkham on his cellular phone before the buy.

Q.     And do you participate in that procedure, the calling procedure before the buy?

A.     Yes. In this particular case, we directed him to make that call to Eddy Phengsengkham to arrange for the purchase of the one ounce of methamphetamine.

. . .

Q.     And did you conduct surveillance?

A.     Yes.

. . .

Q.     When Ricky Ray Johnson came out of the motel, did he have what you believe to be methamphetamine?

A.     Yes. He had what I believed to be methamphetamine. We test -- we have a kit that we utilize that will immediately test the methamphetamine to see . . . And we utilize that right after the buy to confirm the fact that it is, in fact, methamphetamine.

Q.     And did he come back without the $1,000?

A.     After the buy, he was searched, and he did not have the $1,000, but he, in fact, had the one ounce of methamphetamine.

*Id.*, pgs. 158-60.

Defendant's allegations regarding the procedure by which the cooperating source and the

controlled buys were effected are directly rebutted by testimony at trial. Any concern defendant has

regarding the inclusion of this information in the search warrant affidavit is unwarranted. The

thirteen-page-long affidavit set forth several indicia of drug trafficking beyond the controlled drug

buys, and defendant has failed to demonstrate how the omission of the details regarding the handling of the cooperating source rendered the search warrant affidavit inadequate.

### 4.  Ineffective Assistance of Trial Counsel on the Suppression Calim

Defendant avers that, based upon the reasons discussed above, his attorney should have re-urged the motion to suppress when more details about the investigation against him came to light during trial.

### i.  No Deficient Performance

As an initial matter, defendant is proposing his attorney should have attempted to re-litigate, midway through trial, an already denied motion to suppress.  Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure requires that a motion to suppress evidence "must be raised before trial," and subsection (e) of the same rule mandates "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets . . ." Fed. R. Crim. P. 12.  Consequently, the pre-trial denial of a motion to suppress "becomes the law of the case for purposes of the trial, subject to appellate review, and the defendant may not relitigate the suppression issue at trial." *United States v. Montos*, 421 F.2d 215, 220 (5th Cir. 1970).

Defendant contends re-litigation of the motion was possible pursuant to the *Montos* opinion, in which the Fifth Circuit stated, "[o]ccasions will arise . . . when a pretrial denial of a motion to suppress is not binding upon the trial judge.  If new facts come to light at trial, the trial judge in the exercise of his discretion may consider anew the suppression issue." *Id.*  This conclusion was based upon a old version of Rule 41 of the Federal Rules of Criminal Procedure, which, at that time, mandated a motion to suppress should be made before trial "unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion," in which case the court could

entertain the motion.  *Id.* (citing Fed. R. Crim. P. 41e)).

Since the *Montos* opinion, however, the Federal Rules of Criminal Procedure have been amended so that now the rule simply states "[t]he following must be raised before trial . . . a motion to suppress."  Fed. R. Crim. P. 12(b)(3)(C).  Rule 12 does have a provision in it allowing, for good cause, the court to grant relief to a defendant who waived a 12(b)(3) motion, such as a motion to suppress.  Fed. R. Crim. P. 12(e).  Relief in the form of re-litigation of a motion to suppress in the middle of the trial on the merits, however, is extremely uncommon, and the Fifth Circuit has indicated "it is within the power of the district court to bar our review on the merits of a motion to suppress solely on the basis of a defendant's failure to comply with Rule 12."  *United States v. Chavez-Valencia*, 116 F.3d 127, 131 (5th Cir. 1997).

In reviewing ineffective assistance of counsel claims, counsel is held only to the standard of reasonable performance.  *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Given the rarity of a renewed motion to suppress during the course of a trial on the merits, along with the nature of the evidence upon which defendant avers counsel could have made the renewal, the Court cannot conclude counsel's performance was deficient.  *See id.*, 104 S.Ct. at 2064.  Put another way, "reasonable performance" did not require trial counsel to attempt to re-litigate the denied motion to suppress, especially given the nature of the evidence upon which defendant proposes such re-litigation could have been based.

Assuming it was procedurally possible for counsel to take renew the motion to suppress during the trial on the merits, and assuming the district court would have found good cause for the renewed motion, defendant remains unable to show how trial counsel's performance was deficient. Generally, defense counsel is not required to file a motion to suppress but is instead allowed to use

his professional discretion in deciding whether there are grounds for a viable suppression motion. *United States v. Chavez-Valencia*, 116 F.3d 127, 134 (5th Cir. 1997). If the determination of whether to file a motion to suppress falls within the discretion of counsel, then certainly the determination of whether the renew an already denied motion to suppress would be a strategic determination best left to counsel's discretion. *See id.* Moreover, considering the weakness of the grounds upon which defendant now contends counsel should have based the renewed motion, the Court cannot say counsel was deficient in not seeking to reopen the suppression issue based upon such weak grounds. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) (stating trial counsel's failure to file a motion to suppress did not constitute deficient performance under *Strickland* because "[c]ounsel is not required by the Sixth Amendment to file meritless motions"); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (stating the performance component of *Strickland* does not require counsel "to make futile motions or objections"). Counsel's failure, in this case, to not renew the motion to suppress was not outside the bounds of reasonable assistance guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

### ii. No Prejudice

Even if this Court determined counsel should have reopened the suppression issue, defendant is unable to demonstrate prejudice. Defendant is correct in that several details of the sources of information contained in the search warrant affidavit did not emerge until trial. For the reasons detailed above, however, all of the details upon which defendant now bases the instant 28 U.S.C. section 2255 motion do not call into question the validity of the search warrant affidavit. There is no merit to the contentions upon which, defendant avers, counsel could have based a renewed motion to suppress. Therefore, even if counsel had reurged the motion to suppress on the grounds

defendant now proposes, defendant has not shown the district court would have granted the renewed motion.

### 5.   Ineffective Assistance of Appellate Counsel on the Suppression Claim

Regarding appellate counsel's performance, "failure to raise *specific issues or arguments* in pre-trial suppression proceedings operates as a waiver of those issues or arguments for appeal." *United States v. Pope*, 467 F.3d 912, 918-19 (5th Cir. 2006) (citations omitted); *see United States v. Carreon-Palacio*, 267 F.3d 381, 389 (5th Cir. 2001) (suppression argument was not preserved for appeal when it was not raised during the suppression hearing before the district court); *United States v. Harrelson*, 705 F.2d 733, 738 (5th Cir. 1983) ("[f]ailure to move pre-trial for suppression, or to assert a particular ground in the suppression motion, operates as a waiver") (citations omitted). Appellate counsel is not required to raise arguments that have been waived and would therefore be futile on appeal. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *United States v. Simmons*, 142 F.3d 1279, 1998 WL 224564 at *2 (5th Cir. Apr. 21, 1998) (holding appellate counsel was not ineffective by failing to raise arguments waived by defendant before the district court).

The arguments defendant now contends counsel should have raised on appeal were not made at trial and were, consequently, waived for review on appeal. *See Pope*, 467 F.3d at 918-19. As a result, appellate counsel was not deficient for failing to raise (i) waived arguments that (ii) were meritless in any event. *See id.* Moreover, there was no prejudice due to counsel's failure to not raise the arguments because even if he would have raised the arguments, defendant has not shown the appellate court would have granted relief. Consequently defendant's counsel on appeal was neither deficient in his performance nor caused prejudice to defendant. *See Koch*, 907 F.2d at 527.

6.  Ineffective Assistance of Counsel for Failure to Investigate

In his second claim of ineffective assistance of counsel, ground of error 1(b), defendant contends he received ineffective assistance of counsel due to his trial attorney's failure to investigate the witnesses in the case and discover that Agent Reese had been previously found by a state court to have given "incredible" testimony in a search and seizure case.  Amended Motion to Vacate Motion [sic], Set Aside, or Correct Sentence by a Person in Federal Custody," doc. 9, pg. 4.

A defendant alleging inadequate investigation in violation of *Strickland* must show what such investigation would have uncovered and how his defense would have benefitted.  *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).  A defendant cannot "simply allege but must affirmatively prove prejudice" when complaining of counsel's failure to investigate.  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

Assuming, *arguendo*, deficient performance by counsel, defendant has failed to "affirmatively prove prejudice."  *See id.*  The only time Agent Reese testified directly against defendant was when he testified (i) that Ricky Ray Johnson, at that time a drug dealer dealing to Agent Reese acting in an undercover capacity, indicated defendant was his supplier and (ii) that he (Reese) worked with the United States Attorney's office to obtain a wiretap on defendant's phone. "Transcript," vol. I, doc. 1030, pgs. 130-31.  This limited testimony by Agent Reese pales in comparison to the vast amount of strong evidence against defendant, which included the testimony of Johnson (the cooperating source); FBI Agent Dan Baldwin; Eddy Cramer (who testified he bought methamphetamine from defendant, *Id.*, pg. 265), James Brewer (who likewise testified he bought methamphetamine from and sold methamphetamine for defendant, *Id.*, pg. 322); Officer

Donald Bouchard (who participated in the search of a trailer belonging to defendant where methamphetamine was discovered, "Transcript," vol. II, doc. 1031, pgs. 418, 421-22); and Sergeant Damon Samford and Officer Carlos Perez (both of whom discovered methamphetamine at defendant's residence, *Id.*, pgs. 448, 465-70).  Also in evidence at trial was the tape recorded conversations between defendant himself and his brother discussing their drug trafficking business.

Given the weight of evidence against defendant, and the limited testimony of Agent Reese against defendant, defendant cannot demonstrate he suffered prejudice from the unimpeached testimony of Agent Reese.  In addition to the reasons discussed below involving defendant's *Brady* claim, because of the nature of Agent Reese's testimony, defendant remains unable to prove he suffered prejudice based on his attorney's failure to gather impeaching evidence against Agent Reese.  *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.  This point of error is without merit.

## B.  *Brady* Violation

In his second point of error, defendant contends the prosecutor violated *Brady* when she failed to turn over evidence regarding the veracity of DEA Agent Shane Reese.  *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963).  All criminal defendants have a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed. *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984) (citing *Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. at 1196).  "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Id.*, 104 S.Ct. at 2532.  This duty applies irrespective of the good or bad faith of the prosecution.  *Banks v. Dretke*, 540 U.S. 668, 124 S.Ct. 1259, 1272,

157 L.Ed.2d 1166 (2004).  There are three elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused; (2) the government must have suppressed the evidence, and (3) prejudice must have ensued.  *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999).

In this case, one of the government's witnesses was DEA Agent Shane Reese.  "Transcript," vol. I, pg. 128.  Agent Reese testified about the undercover purchase of methamphetamine he made from Ricky Ray Johnson, who later because a cooperating source.  *Id.*, pg. 129-30.  He testified that he worked in conjunction with the U.S. Attorney's Office in obtaining a court order authorizing the tapping of defendant's cell phone and of defendant's brother's cell phone.  *Id.*, pgs. 131, 134.  On recall, Agent Reese testified about surveillance he conducted on defendant's brother.  *Id.*, pg. 346.

Apparently, prior to his testimony in defendant's trial, Agent Reese testified in state court during a hearing on a defendant's motion to suppress in a case unrelated to this case.  *See* "Appendix to Response in Opposition to Amended Motion Under 28 U.S.C. § 2255," doc. 18, pg. 4 (filed Jan. 12, 2011).  After the hearing, the state judge presiding over the proceedings entered "Findings of Facts and Conclusions of Law."  *Id.*, pg. 2.  In those findings, the court stated "Officer Reese was not a credible witness.  His testimony was vague and equivocal.  The Prosecutor was compelled to ask leading and bolstering questions to elicit facts from the officer."  *Id.*  The court then concluded "Officer Reese did not have probable cause to search the defendant's vehicle.  Officer Reese's search of the defendant's vehicle was unreasonable and unlawful."  *Id.*

Defendant now contends the prosecutor violated *Brady* by failing to disclose these state court Findings of Fact and Conclusions of Law detailed above.

Assuming the evidence concerning the state court's determination of Agent Reese's

testimony in an unrelated case would have been favorable to defendant, and assuming the prosecution either willfully or inadvertently suppressed this evidence, defendant is unable to demonstrate prejudice. Prejudice for *Brady* purposes occurs when the suppressed evidence is material. *Banks v. Dretke*, 540 U.S. 668, 691, 124 S.Ct. 1256, 1272, 157 L.Ed.2d 1166 (2004). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280, 119 S.Ct. at 1948. If the evidence could have put the whole case in such a different light as to undermine confidence in the verdict, the evidence is material. *Youngblood v. West Virginia*, 547 U.S. 867, 870, 126 S.Ct. 2188, 2190, 165 L.Ed.2d 269 (2006).

The evidence defendant contends the prosecution should have disclosed was not material to the determination of guilt. As detailed above, there was a *great* deal of evidence directly linking defendant to drug trafficking - evidence which went unrebutted at trial.[2] In contrast, Agent Reese's testimony against defendant was minimal and indirect. *See* "Transcript," vol. I, doc. 1030, pgs. 130-31. If Agent Reese had not at all testified, or if his testimony had been wholly impeached, it seems likely that the jury would have nevertheless returned a guilty verdict. *See Strickler*, 527 U.S. at 281-82, 119 S.Ct. at 1948. Put another way, the evidence concerning a state court's finding regarding Agent Reese's memory in an unrelated case would not have put the whole, and vast, case against defendant in such a different light as to undermine confidence in the jury's verdict. *See Youngblood*,

---

[2] As set forth earlier, the evidence against defendant included the testimony of Ricky Ray Johnson (the cooperating source who made seven controlled drug buys from defendant, "Transcript," vol. I, doc. 1030, pgs. 194-201); FBI Agent Dan Baldwin (who monitored the controlled drug buys, *Id.*, pgs. 152-68); Eddy Cramer (who testified that he bought meth from defendant, *Id.*, pg. 265) , James Brewer (who likewise testified he bought meth from and sold meth for defendant, *Id.*, pg. 322); Officer Carlos Perez (who listened to the wire tapped phone calls between defendant and defendant's brother wherein the two discussed their drug trafficking, *Id.*, pgs. 382-83; "Transcript," vol. II, doc. 1031, pgs. 384-86); Officer Donald Bouchard (who participated in the search of a trailer belonging to defendant's where meth was discovered, "Transcript," vol. II, doc. 1031, pgs. 418, 421-22); Sergeant Damon Samford and Officer Carlos Perez (both of whom discovered meth at defendant's residence, *Id.*, pgs. 448, 465-70).

547 U.S. at 870, 126 S.Ct. at 2190.  Defendant's second ground of error is without merit.

IV.

RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge that the motion to vacate, set aside, or correct sentence by defendant ITTHISON PHENGSENGKHAM be DENIED.

V.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 27th day of June, 2012.


CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D).  When service is made by mail or electronic means, three (3) days are added after the prescribed period.  Fed. R. Civ. P. 6(e).  Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).